## MOSCOW v. LONDON.

(Supreme Court, Appellate Division, First Department. May 22, 1903.)

1. LEASE—ASSIGNMENT—EVIDENCE—SUFFICIENCY.
   In an action to recover a sum of money claimed to have been paid defendant by plaintiff in consideration of defendant's agreement to assign to plaintiff a lease of certain premises, evidence considered, and *held*

insufficient to show that defendant ever accepted any sum in consideration of any such agreement.

Appeal from Trial Term, New York County.

Action by Joseph Moscow against Albert London. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Jacob Manheim, for appellant.
Abraham H. Sarasohn, for respondent.

PATTERSON, J. The judgment and order denying a motion for a new trial in this cause must be reversed on the ground that the verdict of the jury is against the evidence. The plaintiff sued to recover the sum of $500, which he alleges he paid to the defendant and the defendant accepted from him under the promise and agreement that the latter would assign to the former, or cause to be assigned to him, the lease of a store on premises known as 142 Essex street, in the borough of Manhattan, in the city of New York, and that the defendant represented to the plaintiff that there was an unexpired term under the lease, and also represented that such lease was held by him, or under his control. The answer is a general denial.

Upon the trial the only testimony given in support of the plaintiff's contention was that of the plaintiff himself. He swore, in substance, that the store was used as a liquor saloon, and his purpose was to buy it in order to conduct business there under a liquor certificate which he was to acquire; that he talked to the defendant, London, who wanted to sell the place; that there was a lease, which had two years and a half to run, and that he was told he could get the lease of the store for $500. He states that he gave to London the $500 for the store and for the lease; that the rent was $60 a month; that there were fixtures in the store valued at $950, upon which there was a mortgage. He swore that he went with London to a lawyer and paid $400—at first $100, and afterwards $400; that he never got a lease, and that he went to London and demanded one, and that he signed various papers. He entered into possession of the property, bought some liquors, and carried on the business of a saloon keeper at the place. He states that London sold him the place and the lease; that he demanded the lease from London, who finally said he could not give it to him. The effect of the plaintiff's testimony is that subsequently, when he found he could not get a lease, he closed up the business. He had given a mortgage for $950. He procured a release from that mortgage. In many respects the testimony of the plaintiff is vague and unsatisfactory. It is sought to be supported by that of one Oppenheim, who was a collector of rents of the premises, and the agent of the owner of the building; but Oppenheim's testimony adds nothing in support of the plaintiff's claim. On behalf of the defendant it was shown that he did not own and did not control the lease of the premises. He was the collector for a brewing company, which held a mortgage on the fixtures in the store. One Jacobs was the

owner of the saloon, which was managed by one Dagen, his brother-in-law. London swears that he never told Moscow that he had a lease of the premises. According to London's testimony, Moscow came to him, and said he wanted to buy the place 142 Essex street, and was told by London that if he wanted to buy it he must bring over Mr. Jacobs and Mr. Dagen to see him (the defendant). London's relation to the subject was that of agent of the brewer holding the $950 mortgage, and he was interested in the sale only because the purchaser would become substituted as mortgagor in place of the seller. London, upon inquiry, agreed to accept the plaintiff as mortgagor, and, according to his story, that is all he had to do with the transaction. Jacobs was released as mortgagor, and the plaintiff was accepted in his stead. The defendant received no part of the money, and he swears that he never told the plaintiff that he had a lease or could give one. Lerner, an attorney, swears that the plaintiff came to him, and told him that he had bought a saloon from a man by the name of Jacobs, but that he did not pay for it, and he wanted to be released from a mortgage; that he had given a mortgage to the brewer for $950; that he had to give up the saloon, and he wanted a satisfaction of the mortgage drawn, so that, in case the mortgage should be foreclosed after he got out of the place, he would not be liable for a deficiency. The plaintiff then brought in London to the attorney, and the release of the mortgage was executed. Oppenheim, upon being recalled, swore that London never had a lease, but the lease was in the name of Dagen. Dagen swore that he was the manager of the saloon, and that Jacobs, his brother-in-law, was the owner; that the plaintiff came to him, and negotiated for the purchase of the place, and he agreed to sell it for $500; that the plaintiff came to him with Dagen and the defendant, and said he would give $500. He took out $100, and paid it, and Dagen received it, and subsequently, when a bill of sale was made out, the plaintiff paid Dagen $400 in addition, in the presence of London, who counted the money, and Dagen took it and put it in his pocket, and Jacobs signed the bill of sale. Jacobs testifies that he was the owner of the liquor store, and that Dagen was the manager; that he remembered the sale of the store to Moscow; and that he (Jacobs) signed a bill of sale at the office of the notary public, Rosenberg, and Dagen signed it as a witness. He received from Dagen the $100 and also the $400.

It is quite apparent from this record that London's connection with and interest in the business was only in the matter of the substitution of the plaintiff as mortgagor for the $950 mortgage held by the brewer Ochs. He received no part of the $500. It all went to Jacobs, the owner of the saloon. The allegations of the complaint, therefore, that the plaintiff paid to the defendant and the defendant accepted from the plaintiff the sum of $500 in consideration of an agreement to assign to the plaintiff the lease of the premises failed, and the contrary is made to appear. The plaintiff may have been overreached by some one, but responsibility for that is not brought home to the defendant.

The judgment and order must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.